# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

---

№ 21-CV-4493 (AMD) (RER)

---

ADRIANO REYES-FANA,

Plaintiff,

VERSUS

MOCA GROCERY NY CORP., MARIO DURAN, AND ISIDRO RODRIGUEZ,

Defendants.

---

**REPORT & RECOMMENDATION**

August 16, 2022

---

**TO THE HONORABLE ANN M. DONNELLY
UNITED STATES DISTRICT JUDGE**

**RAMON E. REYES, JR., U.S.M.J.:[1]**

On August 10, 2021, Plaintiff Adriano Reyes-Fana ("Plaintiff" or "Reyes-Fana") commenced this action against Defendants Moca Grocery NY Corp. ("Moca Grocery" or "Corporate Defendant"), Mario Duran and Isidro Rodriguez (together, the "Individual Defendants" and with Moca Grocery, the "Defendants") alleging multiple violations of the Fair Labor Standards Act ("FLSA") 29 U.S.C. § 201 et seq., and New York Labor Law ("NYLL"), N.Y. Lab. Law §§ 190 and 650 *et seq*. (ECF No. 1 ("Compl.")). The Defendants failed to answer or otherwise respond,

---

[1] Sydney Krastins, a Brooklyn Law School student and intern in my Chambers, provided substantial assistance in researching and drafting this Report and Recommendation.

resulting in entry of default. (ECF No. 9). Plaintiff filed a Motion for Default Judgment against Defendants (ECF No. 10 ("Mot. for Default J.")), which Your Honor referred to me for Report and Recommendation (Order dated 03/01/2022).

For the reasons set forth below, I respectfully recommend that the Motion be granted as to Moca Grocery, but denied without prejudice as to Individual Defendants in light of Plaintiff's non-compliance with Local Rule 55.2(c). Alternatively, should Plaintiff properly serve the Motion for Default Judgment and a copy of this Report and Recommendation upon the Individual Defendants, and file proof of compliance with Local Rule 55.2(c), I respectfully recommend that the Motion be granted as to all Defendants.

## **BACKGROUND**

### I.   Factual Background

Moca Grocery operates as a grocery store located at 880 Glenmore Avenue in Brooklyn, New York. (Compl. ¶¶ 4, 19). According to the Complaint, Moca Grocery was "engaged in an industry having an affect on commerce," and its annual gross revenue for each of the years at issue exceeded $500,000. (*Id*. ¶¶ 9–12, 15). Duran and Rodriguez serve as the "principals, officers, and/or managers" of Moca Grocery. (*Id*. ¶¶ 6, 8.). At all relevant times, they each controlled the work schedules, pay rates, and methods of payments for all Moca Grocery employees, including Plaintiff. (*Id*. ¶¶ 36–37).

On approximately November 15, 2018, Duran hired Reyes-Fana to work for Defendants at the grocery store. (*Id*. ¶ 32). During his employment, Reyes-Fana worked seven days per week from 7:00 P.M. to 12:00 A.M., when his various duties included "stocking shelves, stocking refrigerators, cutting boxes, taking out trash, gathering and sorting trash for pickup, salting and shoveling snow during the winter months, trouble shooting and maintaining the building's boiler

during winter months and providing security for the business." (*Id*. ¶¶ 21, 23 ). From 12:00 A.M. until 6:00 A.M., he continued working as a security guard. (*Id*. ¶ 23). According to his "best recollections," Reyes-Fana worked an average of 77 hours per week. (ECF No. 10–2 ("Kumar Decl.") ¶¶ 17–18). Individual Defendants "would tell [Plaintiff] what tasks to complete and on what time frame they needed to be completed." (Compl. ¶ 35). On approximately March 19, 2020, Defendant Duran fired Plaintiff. (*Id*. ¶ 34; *see also* Pl's Decl. ¶ 16).

Throughout the entirety of his employment, Plaintiff "was not paid ***any wages*** for any work he did for the Defendants." (Compl. ¶ 24 (emphasis in original)). Plaintiff regularly worked more than forty hours per week and was not paid time and a half for those overtime hours. (*Id*. ¶ 26). Further, "Plaintiff did not receive an extra hour at the prevailing minimum wage when his daily spread of hours/split shift exceeded ten hours." (*Id*. ¶ 28). In lieu of wages, Plaintiff was allowed to stay, rent free, in a windowless room of Moca Grocery's basement that had no hot water. (*Id*. ¶ 24; ECF No. 10-9 ("Pl's Decl.") ¶ 9). This basement, according to Plaintiff, "did not have a certificate of occupancy[.]" (Compl. ¶ 25).

Plaintiff alleges that Defendants did not create or adequately maintain records tracking the precise number of hours Plaintiff worked. (*Id.* ¶¶ 42–43). Additionally, Defendants did not provide Reyes-Fana with a wage notice at the time of his hiring, nor did they ever provide him with a statement of wages. (*Id.* ¶¶ 30, 45).

II.    Procedural History

Reyes-Fana filed this action against Defendants on August 10, 2021. (Compl.). Moca Grocery was served with copies of the Summons and Complaint via the Secretary of State on August 13, 2021. (ECF No. 5). The Individual Defendants were served on August 24, 2021, when copies of the Summons and Complaint were delivered to a person of suitable age and discretion at Individual

Defendants' actual place of business and by mailing the same via first class mail to Individual Defendants' actual place of business. (ECF Nos. 6–7).

After all Defendants failed to appear, Plaintiff requested that the Clerk of the Court enter default on December 7, 2021. (ECF No. 8). On December 10, 2021, the Clerk of the Court entered notations of default pursuant to Federal Rule of Civil Procedure 55(a). (ECF No. 9). On February 28, 2021, Plaintiff moved for default judgment against all Defendants. (Mot. for Default J.). One day later, Plaintiff filed an Affidavit of Service for Notice of Motion for Default Judgment. (ECF No. 11 ("Service of Mot. Aff.")). The Affidavit of Service indicates that copies of the Motion and supporting papers were mailed to each Defendants' "last known address[.]" (*Id.*) The Motion was mailed to the same address for all three Defendants—the business address of Moca Grocery at 880 Glenmore Avenue, Brooklyn, New York 11208. (*Id.*)

## DISCUSSION

### I.   Legal Standard

Federal Rule of Civil Procedure 55 imposes a "two-step process for obtaining default judgment." *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011). First, where a party's failure to respond is "shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, the plaintiff must then petition the court for an entry of default judgment pursuant to Rule 55(b)(2). *See Priestley*, 647 F.3d at 505.

When granting a default judgment, the court must accept as true the plaintiff's well-pleaded factual allegations. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). The court must then determine whether the plaintiff's factual allegations, taken as true, constitute a valid claim for which relief can be granted. *See N.Y.C. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d. Cir. 2011) (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61 (2d

4

Cir. 1981)). The Second Circuit has noted that default judgment "must remain a weapon of last, rather than first, resort." *Pall Corp. v. Entegris, Inc.*, 249 F.R.D. 48, 54 (E.D.N.Y. 2008) (quoting *Meehan v. Snow*, 652 F.2d 274, 277 (2d. Cir. 1981)).

Allegations as to damages need not be accepted as true. *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). Rather, where liability has been established, damages must be established to a "reasonable certainty." *Am. Transit Ins. Co. v. Bilyk*, 514 F. Supp. 3d 463, 477 (E.D.N.Y. 2021) (citing *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)). While the court may conduct hearings to determine damages, it need not do so. *Am. Transit Ins. Co.*, 514 F. Supp. 3d at 477. Instead, the court may rely on "detailed affidavits and documentary evidence" as well as the judge's "personal knowledge of the record." *Fustok v. ContiCommodity Serv.'s, Inc.*, 873 F.2d 38, 40 (2d Cir. 1989). Damages are limited to the amount and type sought in the complaint. *Miguel v. Mi Bella Puebla Corp.*, 16-CV-01593 (SJ) (RER), 2017 WL 4838820, at *2 (E.D.N.Y. Sept. 6, 2017) (citing Fed. R. Civ. P. 54(c)), *adopted by* 2017 WL 4838761 (Oct. 24, 2017).

II.    Procedural Compliance with Local Rule 55.2

Default judgment cannot be granted if the moving party has failed to satisfy proper procedural requirements. *Bhagwat v. Queens Carpet Mall, Inc.*, No. 14-CV-5474 (ENV)(PK), 2018 WL 4921637 at *2 (E.D.N.Y. Sept. 12, 2018), *adopted by* 2018 WL 4941771 (Oct. 11, 2018). These requirements include adherence to certain local rules. *Miss Jones, LLC v. Viera*, No. 18-CV-1398 (NGG) (SJB), 2019 WL 926670, at *4 (E.D.N.Y. Feb. 5, 2019), *adopted by* 2019 WL 955279 (Feb. 26, 2019). Proper "[s]ervice of the motion on non-appearing defendants is of particular importance, because 'mailing notice of such an application is conducive to both fairness and efficiency." *Id.* (quoting Committee Note, Loc. Civ. R. 55.2; citing *Transatlantic Auto Grp., Inc.*

5

*v. Unitrans-PRA Co.*, No. 08-CV-5070 (DLI), 2011 WL 4543877, at *20 (E.D.N.Y. Sept. 9, 2011)).

Local Rule 55.2(c) requires a motion for default judgment and supporting papers to be "mailed to the party against whom a default judgment is sought at the last known residence of such party (if an individual)." Loc. Civ. R. 55.2(c). As the Eastern District has "strictly construed" Local Rule 55.2(c), a moving party's "failure to comply with Local Rule 55.2(c) warrants denial of the motion for default judgment." *Miss Jones*, 2019 WL 926670, at *4 (E.D.N.Y. Feb. 5, 2019) (alteration omitted) (quoting *Feng Lin v. Quality Woods, Inc.*, No. 17-CV-3043 (DLI) (SJB), 2019 WL 1450746, at *7 (E.D.N.Y. Jan. 28, 2019), *adopted by* 2021 WL 4129151 (Aug. 10, 2021)) (denying default judgment, in part, because plaintiff served motion for default judgment at individual defendants' business address, instead of residential addresses). Though a plaintiff may serve a complaint at an individual defendant's business address, a motion for default judgment must be served at that individual's last known residence. *Allstate Ins. Co. v. Abramov*, No. 16-CV-1465 (AMD) (SJB), 2019 WL 1177854, at *3 (E.D.N.Y. Feb. 21, 2019), *adopted by* 2019 WL 1172381 (Mar. 13, 2019).

Here, Plaintiff failed to strictly comply with Local Civil Rule 55.2(c) by providing the Individual Defendants with notice of the instant Motion for Default Judgment at a business address rather than their respective residential address. As noted above, Plaintiff mailed the default judgment motion papers to Duran and Rodriguez at 880 Glenmore Avenue, Brooklyn, New York 11208, which is their "actual place of business." (ECF No. 11 ("Service of Mot. Aff."); Compl. ¶¶ 5, 7). While service at this business address was sufficient for service of the Complaint upon the Individual Defendants, it is plainly insufficient for the purposes of the Plaintiff's Motion for Default Judgment. *See, e.g.*, *Abramov*, 2019 WL 1177854, at *3; *see also J & J Sports Prods., Inc.*

*v. Vergara*, No. 19-CIV-2382 (FB) (VMS), 2020 WL 1034393, at *5 (E.D.N.Y. Feb. 6, 2020) ("Without any representation in the record that [the address to which motion papers were sent] is [defendant's] last known residence, the [c]ourt is left questioning whether [defendant] properly received notice of the motion for default judgment against him."), *adopted sub nom.* 2020 WL 1031756 (Mar. 3, 2020). Since the Plaintiff has failed to show that the default judgment motion papers were mailed to Individual's Defendants' "last known residence," denial of default judgment as to these Defendants is warranted. *Augustin v. Apex Fin. Mgmt.*, No. 14-CIV-182 (CBA) (VMS), 2015 WL 5657368, at *3 (E.D.N.Y. July 27, 2015) (citing *Apex Mar. Co. v. Furniture, Inc.*, No. 11 Civ. 5365(ENV) (RER), 2012 WL 1901266, at *1 (E.D.N.Y. May 18, 2012)) ("Plaintiff's failure to comply with Local Civil Rule 55.2 alone warrants denial of the motion, without prejudice to renew with an affidavit demonstrating proper service."), *adopted by* 2015 WL 7430008 (Nov. 23, 2015)); *see also Feng Lin*, 2019 WL 1450746, at *7–8 (E.D.N.Y. Jan. 28, 2019); *Abramov*, 2019 WL 1177854, at *3, *5; *United States v. Hamilton*, No. 18-CV-2011 (ADS) (SIL), 2019 WL 6830318, at *3 (E.D.N.Y. Nov. 26, 2019) (denying motion for default judgment without prejudice for failure to comply with Local Rule 55.2(c)), *adopted by* 2019 WL 6828276 (Dec. 13, 2019).

In some instances, courts have excused a plaintiff's failure to comply with Local Rule 55.2(c) in light of special circumstances. *Guanglei Jiao v. Shang Shang Qian Inc.*, No. 18-CIV-5624 (ARR) (VMS), 2020 WL 6370148 (E.D.N.Y. Aug. 11, 2020) (overlooking plaintiff's failure to mail motion papers to individual defendants "last known residence," where motion papers were sent to address individual defendants had previously indicated was their "preferred contact address."), *adopted by* 2020 WL 5105063 (Aug. 31, 2020); *In re D'Ancona*, No. 19-CIV-5492 (EK) (VMS), 2021 WL 4482615, at *2 (E.D.N.Y. May 24, 2021) ("Courts have excused a movant's failure to strictly comply with the Local Civil Rules if a defendant received fair notice

7

of the motion for default judgment."), *adopted by* 2021 WL 4480676 (Sept. 30, 2021); *United States v. Kumar*, No. 19-CIV-4501 (ENV) (VMS), 2021 WL 7908019, at *7 (E.D.N.Y. Mar. 19, 2021) ("The [plaintiff's] noncompliance [with Local Civil Rule 55.2] was corrected . . . when [they] served . . . all of the necessary documents including the certificate of default and complaint to [d]efendant at her home address."), *supplemented* 2021 WL 7908013 (Mar. 29, 2021). Here, however, no apparent special circumstances exist that justify overlooking Plaintiff's failure to comply with Local Rule 55.2(c)'s mailing requirements. Individual Defendants have not submitted any court documents indicating the address of Moca Grocery is their preferred contact address, nor is there any indication on the record the Plaintiff has mailed the necessary papers to Individual Defendants' respective residential addresses subsequent to the initial mailing. (Compl. ¶¶ 5, 7; Service of Mot. Aff.). Thus, as there is no reason to believe Individual Defendants have received actual, fair notice of the Motion for Default Judgment against them, the Court will not overlook Plaintiff's failure to comply with Local Rule 55.2(c).

Accordingly, I respectfully recommend that the Motion for Default Judgment be denied with respect to the Individual Defendants without prejudice for failure to comply with Local Rule 55.2(c).

However, as described more fully below, the facts alleged by Plaintiff adequately establish the Individual Defendants' liability under the FLSA and NYLL. Accordingly, upon proof of subsequent compliance with Local Rule 55.2(c) by service of the instant Motion and this Report and Recommendation upon the Individual Defendants at their last known residential addresses, I respectfully recommend that Your Honor grant Plaintiff's Motion for Default Judgment as to all Defendants. *Symbology Innovations, LLC v. Nat. Nectar Inc.*, No. 19-CV-04474 (LDH) (RER), 2020 WL 9814098, at *3 (E.D.N.Y. Aug. 21, 2020) (recommending denial of default judgment

for defective service of motion papers, but still assessing the merits of plaintiff's claims against individual defendants); *Abbas v. Hestia Tobacco, LLC*, No. 18-CV-5151 (ENV) (RER), 2020 WL 9812912, at *3–4 (E.D.N.Y. Aug. 28, 2020) (same).

### III.    Liability under FLSA and NYLL

#### A.    FLSA and NYLL Coverage

The FLSA and NYLL's minimum wage, overtime pay, and other employment standard provisions "apply only to employees of covered employers." *Cabrera v. Canela*, 412 F. Supp. 3d 167, 178 (E.D.N.Y. 2019); *see also Fermin v. Las Delicias Peruanas Rest.*, Inc., 93 F. Supp. 3d 19, 31–32 (E.D.N.Y. 2015) ("To establish a claim under the FLSA for minimum wage or overtime compensation, a plaintiff must show that he or she is an 'employee' of the defendant within the meaning of the FLSA[.]"). Thus, as a threshold matter, a plaintiff in a wage and hour action must prove "(1) that the defendant employed the plaintiff, and (2) that the employment fell under the FLSA's individual or enterprise coverage provisions." *Baizan Guerrero v. 79th St. Gourmet & Deli Inc.*, No. 18-CV-04761 (ARR) (ST), 2019 WL 4889591, at *4 (E.D.N.Y. Sept. 10, 2019) (citing *Jacobs v. New York Foundling Hosp.*, 577 F.3d 93, 96–97 (2d Cir. 2009)), *adopted by* 2019 WL 4887914 (Oct. 3, 2019).

#### 1.    Plaintiff's Employment is Covered by the FLSA and NYLL

To qualify for FLSA protection, a plaintiff "must show either that their employer was an enterprise engaged in interstate commerce [("Enterprise Coverage")] or that their work as employees regularly involved them in interstate commerce [("Individual Coverage")]." *Cabrera*, 412 F. Supp. at 178; *see also Jacobs v. New York Foundling Hosp.*, 483 F. Supp. 2d 251, 257–58 (E.D.N.Y. 2007), *aff'd*, 577 F.3d 93 (2d Cir. 2009). An employer is an "enterprise engaged in commerce" triggering Enterprise Coverage if it (1) "has employees handling, selling, or otherwise

working on goods or materials that have been moved in or produced for commerce by any person," and (2) has an "annual gross volume of sales made or business done . . . [of] not less than $500,000." 29 U.S.C. § 203(s)(1)(A)(i)-(ii). Unlike the FLSA, the NYLL contains no interstate requirement. N.Y. Lab. Law § 651(6); *see also Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 84–85 (E.D.N.Y. 2012) ("Unlike the FLSA, New York law does not require the plaintiffs to show a nexus with interstate commerce or any minimum amount of annual sales.").

Here, Plaintiff has adequately alleged that he was employed by an "enterprise engaged in commerce" as to establish enterprise coverage. Plaintiff's Complaint states that the gross receipts of Moca Grocery during the relevant years of his employment "were not less than $500,000," that Defendants "were engaged in an industry having an affect on commerce within the meaning of 29 U.S.C. § 203, and that Plaintiff would "unpac[k] and stoc[k] goods for sale which originated outside of New York State." (Compl. ¶¶ 9–12, 15–16). On a motion for default judgment, such "conclusory allegations" may suffice to establish enterprise coverage "where it may be inferred from the type of business enterprise that it was engaged in interstate commerce*." Cabrera*, 412 F. Supp. 3d at 179; *see also Baizan Guerrero*, 2019 WL 4889591, at *5 (quoting *Fermin*, 93 F. Supp. 3d at 33) ("[I]t is reasonable to infer that the operation of a New York deli with over $500,000.00 in annual sales 'requires a wide variety of materials . . . .' and it is 'reasonable to infer that some of these materials moved or were produced in interstate commerce.'"); *Cardoza v. Mango King Farmers Mkt. Corp.*, No. 14-CV-3314 (SJ) (RER), 2015 WL 5561033, at *4 (E.D.N.Y. Sept. 1, 2015) (internal quotation marks omitted) (finding allegations "that [d]efendants are engaged in the food supply industry and that Defendants employed [plaintiffs] to perform work such as receiving deliveries, stocking shelves . . . cutting and packing produce . . . and other supermarket related tasks," sufficient to satisfy interstate requirement, as "[i]t is logical to infer that a supermarket's

10

products and produce would have originated outside of New York."), *adopted by* 2015 WL 5561180 (Sept. 21, 2015); *Newman v. W. Bar & Lounge, Inc.*, No. 20-CV-1141 (KAM) (RER), 2021 WL 2401176, at \*5 (E.D.N.Y. June 11, 2021) ("[T]he court can reasonably infer that at least some materials handled by the plaintiff-employee have moved or engaged in interstate or international commerce, such as the food, beverages, products, materials, and equipment utilized by the defendants.").

As in *Baizan*, *Cardoza*, and *Newman*, it is reasonable to infer that operation of Defendants' New York grocery store necessarily involves the use of materials that were produced or moved in interstate commerce. Thus, Plaintiffs allegations are sufficient to satisfy the FLSA's interstate requirement, and the FLSA accordingly applies to Plaintiff's employment at Moca Grocery.

### 2.    Defendants Are Employers Under the FLSA and NYLL

A plaintiff can only bring a claim for minimum wage, overtime pay, or other employment standard violations if the defendant is deemed an "employer" as defined by the FLSA. *See Fernandez v. Kinray*, Inc., 406 F. Supp. 3d 256, 260–61 (E.D.N.Y. 2018). Thus, liability under the statute requires the existence of an employer-employee relationship. *See Liu v. Millenium Motors Sports, LLC.*, No. 17-CV-06438 (RPK) (RER), 2021 WL 4268136, at \*3 (E.D.N.Y. May 24, 2021) ("As a threshold matter, [p]laintiffs must establish that a non-exempt employer-employee relationship existed[.]"), *adopted by* 2021 WL 3463193 (Aug. 6, 2021); *see also Reyes v. Tacos El Gallo Giro Corp.*, No. 20-CV-3474 (EK) (SJB), 2022 WL 940504, at \*6 (E.D.N.Y. Jan. 25, 2022), *adopted by* 2022 WL 939769 (Mar. 29, 2022).

The FLSA defines an employee as "any individual employed by an employer," and defines "[e]mploy" to "include to suffer or permit to work." 29 U.S.C. §§ 203(e)(1), (g). Such an employer is "any person acting directly or indirectly in the interest of an employer in relation to an

employee." 29 U.S.C. § 203(d).[2] "The 'ultimate question' is whether 'the worker depends upon someone else's business for the opportunity to render service or is in business for himself.'" *Bhagwat*, 2018 WL 4921637, at *5 (quoting *Saucedo v. On the Spot Audio Corp.*, No. 16-CV-00451 (CBA) (CLP), 2016 WL 8376837, at *5 (E.D.N.Y. Dec. 21, 2016), *adopted by* 2017 WL 780799 (E.D.N.Y. Feb. 28, 2017), *vacated in subsequent determination*, 2018 WL 4347791 (E.D.N.Y. Jan. 23, 2018)).

a.    Corporate Defendant Employed Plaintiff

Plaintiff alleges that he was employed to work at Moca Grocery from November 15, 2018, until March 19, 2020, and that the work he performed—*e.g.,* stocking shelves, cutting boxes providing security, gathering trash for pickup—was for the benefit of Moca Grocery. (Compl. ¶¶ 20–22, 32). Accepting these allegations as true, Plaintiff adequately alleges that Defendant Moca Grocery is a covered enterprise that employed him during the relevant time period, and consequently Moca Grocery is an employer under the FLSA and NYLL. *See Leon v. Zita Chen*, No. 16-CV-480 (KAM) (PK), 2017 WL 1184149, at *5 (E.D.N.Y. Mar. 29, 2017) (finding plaintiff's allegations that "he worked for [corporate defendant] in its factory, and delivered and installed [corporate defendant's] products to its customers in New York, New Jersey and in Connecticut," was sufficient to establish that corporate defendant was an employer under the FLSA and NYLL); *see also Juarez v. Precision Apparel, Inc.*, No. 12-CV-2349 (ARR) (VMS), 2013 WL 5210142, at *5 (E.D.N.Y. Sept. 13, 2013) (finding corporate defendants were employers where plaintiff alleged "that he worked for the corporate [d]efendants in the manufacturing of clothing by cutting cloth . . . and packaging it for shipment" as it "suffice[d] to show that he acted directly in the interest of [corporate defendants].").

---

[2] The FLSA's definition for "employer" extends to both individuals and corporate entities. 29 U.S.C. § 203(a).

b.    Individual Defendants Employed Plaintiff

Plaintiff also claims that Individual Defendants were both his employers within the meaning of the FLSA and NYLL. (Compl. ¶ 41).

To determine whether an employer-employee relationship exists between an employee and an individual, "the relevant inquiry is 'whether the alleged employer possessed the power to control the workers in question, . . . with an eye to the economic reality presented by the facts of each case.'" *Cabrera*, F. Supp. 3d at 178 (alteration in original) (quoting *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999)). Accordingly, the Second Circuit has outlined an "economic realities" test, which assesses "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment and (4) maintained employment records." *Leon*, 2017 WL 1184149, at *5 (internal quotation marks omitted) (quoting *Irizarry v. Catsimatidis*, 722 F.3d 99, 103–05 (2d Cir. 2013)).

In this case, Defendants Duran and Rodriguez possessed the requisite control over Reyes-Fana so that they may be held liable as Reyes-Fana's employers. Plaintiff's allegations satisfy at least three of the four economic reality factors, as Defendants Duran and Rodriguez "made decisions as to hiring and firing," "controlled the terms and conditions of employment," and "controlled the rates and methods of payment of each of the [Moca Grocery] employees." (Compl. ¶¶ 37, 40). Regarding the fourth factor, Plaintiff states that "Defendants did not . . . maintain records showing the precise number of hours Plaintiff worked or of wages earned." (Compl. ¶¶ 42). However, Defendants' failure to maintain such employment records "does not undermine [a finding that individual defendants were plaintiff's employers], because no employment records were kept." *Fermin*, 93 F. Supp. 3d at 36; *see also Leon*, 2017 WL 1184149, at *5 (quoting *Mahoney v. Amekk*

*Corp.*, No. 14-CV-4131 (ENV) (VMS), 2016 WL 6585810, at *8 (E.D.N.Y. Sept. 30, 2016), *adopted by* 2016 WL 6601445 (Nov. 7, 2016)) ("That no employment records were presented does not undermine the 'economic reality' that [defendant] 'controlled all tasks related to [p]laintiff's employment.'").[3]

As Plaintiff has demonstrated satisfaction of at least three out of the four "economic reality" factors, I conclude that the Individual Defendants were Plaintiff's employers within the meaning of the FLSA and the NYLL.

> c.    Corporate Defendant and Individual Defendants are Joint Employers

Plaintiff brings this action against Corporate Defendant Moca Grocery as well as the individually named Defendants, Mario Duran and Isidro Rodriguez, as joint employers. (Compl. ¶¶ 3–8, 60; ECF No. 10-1 ("Pl's Mem.") at 5–6).

An employee may have more than one employer under both the FLSA and NYLL, "in which case 'all joint employers are responsible, both individually and jointly, for compliance with all of the [statutes'] applicable provisions[.]'" *Baizan Guerrero*, 2019 WL 4889591, at *4 (quoting *Sarkaputar v. Veratip Corp.*, 371 F. Supp. 3d 101, 104 (S.D.N.Y. 2019); 29 C.F.R. § 791.2(a)); *see also Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 128 (E.D.N.Y. 2011) ("Courts in this [C]ircuit have held that the same analysis applies when determining whether defendants are jointly liable as employers under the FLSA and the NYLL."). In actions seeking to hold both a corporate defendant and an individual defendant jointly liable, courts have held that "a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation." *Cabrera*, 412 F. Supp. 3d at 179 (quoting *Moon v. Kwon*, 248 F. Supp. 2d 201,

---

[3] Indeed, "the failure to keep records is itself an FLSA and a NYLL violation." *Fermin*, 93 F. Supp. 3d at 36 n.7 (citing 29 U.S.C. § 211(c); NYLL § 195(4); *Racewicz v. Alarm Processing Sys., Inc.*, No. 14 Civ. 2325(ILG), 2014 WL 4417354, at *1 (E.D.N.Y. Sept. 8, 2014).

237 (S.D.N.Y. 2002)) (using the "economic realities" factors to determine operational control); *see also Peralta v. M & O Iron Works, Inc.*, No. 12-CV-3179 (ARR) (RLM), 2014 WL 988835, at *4 (E.D.N.Y. Mar. 12, 2014) (citing *Moon*, 248 F. Supp. 2d at 236–37) ("[J]oint employers, including corporate officers with the 'power to control,' may be held jointly and severally liable for FLSA violations.").

Here, Plaintiff alleges that "Defendants are joint employers of the Plaintiff," and that Defendants Duran and Rodriguez were "officers" of Moca Grocery who "exercised close control over the managerial operations of Moca Grocery." (Compl. ¶¶ 6, 8, 39, 60, 66). These allegations, together with the Court's finding that Individual Defendants, as a result of their satisfaction of the economic reality factors, exercise "operational control" over Moca Grocery, adequately establish that Defendants Duran and Rodriquez employed Plaintiff jointly with Moca Grocery. *See Rodriguez*, 784 F. Supp. 2d at 128 (finding that, because individual defendants had "operational control" of corporate defendant, all defendants were jointly and severally liable); *Baizan Guerrero*, 2019 WL 4889591, at *4–5 (finding that each defendants' satisfaction of the four economic reality factors, together with plaintiff's allegations that "[d]efendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees," was sufficient "to conclude that [i]ndividual Defendants employed [p]laintiff jointly with [c]orporate [d]efendants.").

Thus, I respectfully recommend that each Defendant should be held jointly and severally liable for any damages awarded to Plaintiff.

B.    Statute of Limitations

For a plaintiff to recover under the FLSA and NYLL, the action must be brought within the applicable statute of limitations. *See Cabrera*, 412 F. Supp. 3d at 177. "The statute of limitations

for an FLSA claim is two years, unless the violation is 'willful,' in which case it is three years." *Kuebel v. Black & Decker, Inc.*, 643 F.3d 352, 366 (2d Cir. 2011) (quoting 29 U.S.C. § 255(a)). Allegations of willfulness are accepted as true on default for purposes of determining the limitations period of FLSA claims. *Leon*, 2017 WL 1184149, at *4 ("When a defendant defaults, courts consider the violation "willful" and apply the three-year statute of limitations."); *Fermin*, 93 F. Supp. 3d at 38 ("[A]s [p]lainitffs allege that [d]efendants' failure to pay minimum wage was knowing and willful, the three-year limitations period applies."); *Easterly v. Tri–Star Transport Corp.*, No. 11-CV-6365 (VB), 2015 WL 337565, at *6 (S.D.N.Y. Jan. 23, 2015) ("[A]s [the p]laintiff alleges that [the defaulting defendant] committed FLSA violations willfully . . . the three-year federal period applies."; *Gunawan*, 897 F. Supp. 2d at 87 ("[Defendant] has therefore forfeited, by virtue of its default, any argument that [the plaintiff] has failed to establish its willfulness for purposes of the limitations period."). In contrast, the statute of limitations for a claim under the NYLL is six years, regardless of whether the violations were willful. N.Y. Lab Law §§ 198(3), 663(3).

Plaintiff commenced this action on August 10, 2021. (ECF No. 1). As Reyes-Fana alleges that Defendants committed FLSA violations willfully, and Defendants have failed to dispute that allegation by virtue of their default, the FLSA's three-year statute of limitations applies. (Compl. ¶¶ 51–52, 57). Thus, Plaintiff's claims, which arise from his employment dated from November 15, 2018 through March 19, 2020, are timely under both the FLSA and NYLL. (Compl. ¶ 20).

C.    Liability under FLSA and NYLL

Once it is established that defendants are covered by the FLSA and NYLL, a plaintiff "must show that the employer[s] violated one or more of [their] requirements." *Man Wei Shiu v. New*

*Peking Taste Inc.*, No. 11-CV-1175 (NGG) (RLM), 2014 WL 652355, at *10 (E.D.N.Y. Feb. 19, 2014).

1.   Hours Worked

To establish liability for unpaid wages under the FLSA and NYLL, a plaintiff "has the burden of proving that he performed work for which he was not properly compensated." *Fermin*, 93 F. Supp. 3d at 42 (quoting *Pineda v. Masonry Const.*, Inc., 831 F. Supp. 2d 666, 674 (S.D.N.Y.2011)). However, where a defaulting employer has failed to maintain adequate employee wage records, a "plaintiff's estimates [of work schedules and pay] may constitute sufficient evidence." *Fermin*, 93 F. Supp. 3d at 43; *see also Cabrera*, 412 F. Supp. 3d at 181 ("[B]ecause [defendants] have defaulted and no employment records have been produced, the court will presume the accuracy of plaintiff's recollection and estimates of hours worked.").

The Court therefore accepts as true Plaintiff's recollections that he worked an average of 77 hours per week, every week, from November 15, 2018 until March 19, 2020. (Compl. ¶¶ 20, 23; Kumar Decl. ¶ 18; Pl's Decl. ¶ 8).

2.   Minimum Wage Violations

Plaintiff alleges Defendants violated the FLSA and NYLL's minimum wage requirements. (Compl. ¶¶ 1, 48–53, 58–63.)

"An employer subject to the FLSA and NYLL is required to pay its employees at least the minimum wage for every hour worked." *Baizan Guerrero*, 2019 WL 4889591, at *7 (citing 29 U.S.C. § 206; N.Y. Lab. Law § 652(1); 12 N.Y. Comp. Codes R. & Regs. § 142-2.1(a)). Here, Plaintiff alleges that he was paid absolutely no wages for his work. (Compl. ¶ 24). Instead, he was permitted to stay in the Moca Grocery basement rent free, in a room that allegedly did not have a certificate of occupancy. (*Id.* ¶¶ 24–25; Pl's Decl. ¶ 9).

Under certain circumstances, the FLSA allows an employer to count "the reasonable cost . . . of furnishing [an] employee with board, lodging, or other facilities" as wages. 29 U.S.C. § 203(m). However, employers who wish to deduct such costs from wages are required to "maintain and preserve records substantiating the cost of furnishing" that lodging. 29 C.F.R. § 516.27. Moreover, employers cannot deduct the costs of a lodging in "[f]acilities furnished in violation of any Federal, State, or local laws, ordinance or prohibition[.]" 29 C.F.R. § 531.31. In relevant part, Section 28-118 of the New York City Administrative Code states that "[n]o building . . . shall be used or occupied without a certificate of occupancy issued by the commissioner," and that no such building that is "altered so as to change from one occupancy group to another . . . either in whole or in part, shall be occupied . . . until the commissioner has issued a certificate of occupancy." N.Y.C. Admin Code §§ 28-118.1, 28-118.3.2.[4] Thus, the Defendants' alleged failure to obtain the required certificate of occupancy for the basement apartment renders the dwelling ineligible for purposes of an FLSA wage offset.

Since Defendants failed to maintain or produce any records in connection with Plaintiff's employment, including the required lodging records, and because the lodging provided was in violation of local laws, any reasonable lodging costs incurred from providing the rent-free apartment should not be deducted from any wages that are owed to Plaintiff. 29 C.F.R. §§ 516.27, 531.31; *see also Llolla v. Karen Gardens Apartment Corp.*, No. 12-CV-1356 (MKB) (JO), 2014 WL 1310311, at *9 (E.D.N.Y. Mar. 10, 2014) (quoting *Jiao v. Shi Ya Chen*, No. 03 Civ. 165 (DF), 2007 WL 4944767, at *13–14 (S.D.N.Y. Mar. 30, 2007) (noting that "courts have 'routinely

---

[4] N.Y.C. Code § 28-101.5 defines "occupancy" as "[t]he purpose or activity for which a building or space is used or is designed, arranged or intended to be used." The New York City Department of Buildings website specifically includes as an example of illegal conversion, "[a]dding an apartment in the basement, attic or garage without obtaining approval or permits from DOB. *Illegal Conversion,* NYC Dep't of Buildings, https://www1.nyc.gov/site/buildings/tenant/illegal-conversion.page.

den[ied] employer offsets'" under circumstances where defaulting defendants neither "produced the legally required records, nor . . . substantiated their reasonable costs of [providing an employee with a rent-free apartment.]"); *see also Yu G. Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 256–57 (S.D.N.Y. 2008) ("the employer must retain records documenting the out-of-pocket costs [for non-cash benefits supplied to wage earners] that it incurred, and bears the burden of proving both the actual costs and their reasonableness.").

As such, the Court accepts that Plaintiff's hourly wage was $0 per hour. During the times relevant to Plaintiff's claim, the federal minimum wage was $7.25 per hour under the FLSA. 29 U.S.C. § 206(a)(1). The relevant New York minimum wage, starting December 31, 2017, was $12.00 per hour; on December 31, 2018, it increased to $13.50 per hour; and on December 31, 2019, it increased again to $15.00 per hour. 12 N.Y. Comp. Codes R. & Regs. § 142-2.1. Taking Plaintiff's allegations and recollections of wages paid and hours worked as true, as the Court must, Defendants clearly failed to meet these wage requirements. Thus, I respectfully recommend that Your Honor find Defendants are liable to Plaintiff for minimum wage violations under the FLSA and the NYLL.

3.    Unpaid Overtime Wages

Under both the FLSA and NYLL, employees who work more than forty hours in a single workweek are entitled to an overtime wage of not less than one-and-one-half times the regular rate for the excess hours worked. *See* 29 U.S.C. § 207(a)(1); 29 C.F.R. § 778.110(a); 12 N.Y. Comp. Codes R. & Regs. § 146-1.4. Here, Plaintiff has alleged Defendants failed to pay him overtime compensation in violation of the FLSA and NYLL. (Compl. ¶¶ 1, 54–57, 64–69).

To allege a plausible overtime claim, "a plaintiff must sufficiently allege [forty] hours of work in a given workweek as well as some uncompensated time in excess of the [forty] hours." *Fermin*,

93 F. Supp. 3d at 44 (quoting *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 114 (2d Cir.2013)). Further, "a plaintiff must provide 'sufficient detail about the length and frequency' of unpaid work in order to support 'a reasonable inference' that he or she 'worked more than forty hours in a given week.'" *Luna v. Gon Way Constr., Inc.*, No. 16-CV-1411 (ARR) (VMS), 2017 WL 835321, at *10 (E.D.N.Y. Feb. 14, 2017) (quoting Nakahata v. New York-Presbyterian Healthcare Sys., Inc., 723 F.3d 192, 201 (2d Cir. 2013)), *adopted by* 2017 WL 835174 (Mar. 2, 2017)). The NYLL "mirrors the FLSA in compensation provisions regarding . . . overtime." *Santillan v. Henao*, 822 F. Supp. 2d 284, 292 (E.D.N.Y. 2011).

Plaintiff alleges that he "regularly worked for Defendants in excess of [forty] hours a week;" specifically, he claims he worked seven days a week from 7:00 P.M. to 6:00 A.M., for an "average [of] 77 hours per week." (Compl. ¶¶ 23, 26; Kumar Decl. ¶ 18). Plaintiff alleges that he was not paid any overtime premium for any of those hours worked in excess of forty hours per week. (Compl. ¶ 26). Accordingly, taking these allegations as true, I respectfully recommend that Your Honor find Defendants are liable under the FLSA and NYLL for failure to pay Plaintiff his overtime premium.

4.    <u>Spread of Hours</u>

Plaintiff also brings a spread of hours claim against Defendants under the NYLL. (Compl. ¶¶ 1, 70–73).

The NYLL spread of hours provision provides that "an employee is entitled to recover compensation for an extra hour of work at the minimum wage for each day that the employee works in excess of ten hours." *Man Wei Shiu*, 2014 WL 652355, at *10 (citing 12 N.Y. Comp. Codes R. & Regs. § 142–2.4). The Complaint states that Plaintiff regularly worked from 7:00 P.M. to 12:00 A.M. and "did not receive an extra hour at the prevailing minimum wage" for those days

that "his daily spread of hours/split shift exceed ten hours." (Compl. ¶¶ 23, 28). Taking these well-pleaded allegations as true, I respectfully recommend that Your Honor find Defendants liable to Plaintiff for spread of hours pay under the NYLL.

5.    Wage Notices and Wage Statements

Plaintiff requests statutory damages for Defendants' failure to comply with the wage notice provisions of the NYLL, as well as their failure to provide wage statements in compliance with the NYLL. (Compl. ¶¶ 1, 30, 74–79).

The NYLL requires employers to "provide [their] employees, in writing . . . a notice containing . . . the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including . . . lodging allowances[.]" N.Y. Lab. Law § 195(1). These wage notices need be provided "at the time of hiring." N.Y. Lab. Law § 195(1)(a); *see also Cabrera*, 412 F. Supp. 3d at 184. The statute also requires employers to provide each employee with "accurate, specifically enumerated wage statements each pay period." *Zhang v. Asian Moon Rest. Corp.*, No. 20-CV-2776 (DG) (AYS), 2022 WL 1422576, at *5 (E.D.N.Y. Mar. 15, 2022) (citing N.Y. Lab. Law § 195(3)), *adopted by* 2022 WL 1460275 (May 9, 2022). These statements must "lis[t], *inter alia*, the dates of work covered by that payment of wages, the employer's address and telephone number, the applicable rate or rates of pay, applicable deductions, and any allowances claimed as part of the minimum wage." *Cabrera*, 412 F. Supp. 3d at 185 (citing N.Y. Lab. Law § 195(3)).

According to Plaintiff, Defendants failed to "provide Plaintiff with a wage notice at the time of his hire, or at any time thereafter," that contained the required information. (Compl. ¶ 30). Plaintiff further alleges that "Defendants failed to provide [him] with wage statements that reflected the amount of hours he worked, his regular rate of pay or his overtime rate of pay for

each hour he worked in excess of forty hours in a given workweek." (Compl. ¶ 29). Accepting these well-pleaded allegations as true, I respectfully recommend that Your Honor find Defendants are liable for wage notice and wage statement violations under the NYLL.

## IV.   Damages

As the Court has determined that Defendants are liable to Plaintiff for FLSA and NYLL violations, "the Court now must determine whether plaintiffs have established their damages to a 'reasonable certainty.'" *Martinez v. Alimentos Saludables Corp.*, No. 16-CV-1997 (DLI) (CLP), 2017 WL 5033650, at *11 (E.D.N.Y. Sept. 22, 2017) (citing *Gunawan*, 897 F. Supp. 2d at 83).

### A.   Unpaid Minimum Wage

A plaintiff with a valid wage claim under both federal and state law may recover under whichever statute provides the greater damages. *Baizan Guerrero*, 2019 WL 4889591, at *7; *see also Cabrera*, 412 F. Supp. 3d at 181 (citing *Wicaksono v. XYZ 48 Corp.*, No. 10 Civ. 3635, 2011 WL 2022644, at *3 (S.D.N.Y. May 2, 2011), *adopted by* 2011 WL 2038973 (May 23, 2011); 29 U.S.C. § 218(a)) ("The federal minimum wage does not preempt the state minimum wage, and a plaintiff may recover under whichever statute provides the highest measure of damages."). Throughout Reyes-Fana's employment, the federal minimum wage was $7.25 per hour, while the New York State minimum wage ranged from $12.00 per hour to $15.00 per hour. 29 U.S.C. § 206(a)(1); 12 N.Y. Comp. Codes R. & Regs. § 142-2.1. Thus, the higher state minimum wage will be applied to calculate Plaintiff's damages for unpaid wages.

To calculate unpaid minimum wages due, the plaintiff's hourly rate is subtracted from New York's minimum wage rate. *Rodriguez*, 784 F. Supp. 2d at 126. Next, the difference is multiplied "by forty hours to determine the amount by which plaintiff was underpaid each week," and that amount is then multiplied by the number of weeks plaintiff was underpaid. *Coulibaly v.*

*Millennium Super Car Wash, Inc.*, No. 12-CV-04760 (CBA) (CLP), 2013 WL 6021668, at *11 (E.D.N.Y. Nov. 13, 2013).

Here, as established, Plaintiff's hourly rate was $0 per hour throughout the entirety of his employment. (Compl. ¶ 24). Thus, the difference between Plaintiff's hourly rate and New York's minimum wage rate will be the applicable New York minimum wage rate was during the relevant time period. Applying these standards, during the six-week period spanning between November 15, 2018 through December 30, 2018, when the minimum wage was $12.00 per hour, Plaintiff's unpaid wages amount to $480 per week in regular wages, or $2,880 total. During the fifty-two-week period spanning from December 31, 2018 through December 30, 2019, when the minimum wage was $13.50 per hour, Plaintiff's unpaid wages amount to $540 per week in regular wages, or $28,080 total. Finally, during the eleven-week period spanning from December 31, 2019 through March 19, 2020, when the minimum wage was $15.00 per hour, Plaintiff's unpaid wages amount to $600 per week in regular wages, or $6,600 total.

The following chart outlines the numbers used to reach this calculation:

| Pay Period | Weeks Worked | Hours Worked/ Week | Actual Wage Rate Paid | Minimum Wage Rate | Actual Wages Paid | Wages Owed on First 40 Hours/Week | Underpaid Regular Wages/Week | Total for Pay Period |
|---|---|---|---|---|---|---|---|---|
| **11/15/2018– 12/30/2018** | 6 | 77 | $0.00 | $12.00 | $0.00 | $480 | $480 | $2,880 |
| **12/31/2018– 12/30/2019** | 52 | 77 | $0.00 | $13.50 | $0.00 | $540 | $540 | $28,080 |
| **12/31/2019– 3/19/2020** | 11 | 77 | $0.00 | $15.00 | $0.00 | $600 | $600 | $6,600 |
| **Total Minimum Wage Owed:** | | | | | | | | **$37,560.00** |

Accordingly, I respectfully recommend that Plaintiff be awarded $37,560.00 representing unpaid minimum wages.

B.    Unpaid Overtime Wages

The FLSA and NYLL entitle employees who work over forty hours per week to be paid an overtime rate for those excess hours. *See* 29 U.S.C. § 207(a)(1); 29 C.F.R. § 778.110(a); 12 N.Y. Comp. Codes R. & Regs., § 146-1.4. Under both statutes, a plaintiff's "'overtime rate is calculated by multiplying [their] regular hourly rate (or the minimum wage rate, if his regular hourly rate falls below the minimum wage) by one and one-half.'" *Baizan*, 2019 WL 4889591, at *8 (quoting *Rosendo v. Everbrighten Inc.*, No. 13 Civ. 7256 (JGK) (FM), 2015 WL 1600057, at *4 (S.D.N.Y. Apr. 7, 2015), *adopted by* 2015 WL 4557147 (July 28, 2015)). If a plaintiff's regular rate falls below the statutory minimum wage, either the federal minimum wage or state minimum wage is used to calculate their overtime rate—whichever is higher. *Rodriguez*, 784 F. Supp. 2d at 126 n.4 (citing 29 C.F.R. § 778.5) ("Under the FLSA, where the state minimum wage is higher than the federal minimum wage, the federal overtime rate is calculated based on the state minimum wage."). Thus, because Reyes-Fana's regular rate fell below both the state and federal minimum wage, and the state minimum wage was higher throughout the entirety of his employment, the state minimum wage will be used to calculate his overtime rate. *See* 29 U.S.C. § 206(a)(1); 12 N.Y. Comp. Codes R. & Regs. § 142-2.1.

Here, Plaintiff worked an average of seventy-seven hours per week from November 15, 2018 through March 19, 2020 (Compl. ¶¶ 20, 23; Kumar Decl. ¶ 18; Pl's Decl. ¶ 8); thus, the thirty-seven hours he worked in excess of forty hours per week should have been paid at the statutory minimum wage rate multiplied by one and one-half. Applying these standards, from November 15, 2018 through December 30, 2018, Plaintiff should have been paid $666 per week in overtime

wages, or $3,996 total. From December 31, 2018 through December 30, 2019, Plaintiff should have been paid $749.25 per week in overtime wages, or $38,961 total. And from December 31, 2019 through March 19, 2020, Plaintiff should have been paid $832.50 per week in overtime wages, or $9,157.50 total.

The following chart outlines the numbers used to reach this calculation:

| Pay Period | Weeks Worked | Overtime Hours Per Week | Wage Rate Paid | Minimum Wage Rate | Overtime Rate | Unpaid Overtime Per Week | Total for Pay Period |
|---|---|---|---|---|---|---|---|
| 11/15/2018–12/30/2018 | 6 | 37 | $0.00 | $12.00 | $18.00 | $666.00 | $3,996.00 |
| 12/31/2018–12/30/2019 | 52 | 37 | $0.00 | $13.50 | $20.25 | $749.25 | $38,961.00 |
| 12/31/2019–3/19/2020 | 11 | 37 | $0.00 | $15.00 | $22.50 | $832.50 | $9,157.50 |
| **Total Overtime Wages Owed:** | | | | | | | **$52,114.50** |

Accordingly, I respectfully recommend that Plaintiff be awarded $52,114.50 in unpaid overtime wages.

C.    Unpaid Spread of Hours Compensation

Damages for unpaid spread of hours compensation are calculated by "multipl[ying] the minimum wage rate under the NYLL for the relevant period by the number of days each respective plaintiff worked over ten hours and then multipl[ying] that figure by the number of weeks in the period." *Martinez*, 2017 WL 5033650, at *17. Plaintiff alleged that he worked over ten hours a day, seven day a week, for the entire duration of his employment. (Compl. ¶¶ 20, 23, 28). As such, from November 15, 2018 through December 30, 2018, Plaintiff should have received $504 in spread of hours compensation; from December 31, 2018 through December 30, 2019, Plaintiff

should have received $4,914 in spread of hours compensation; and from December 31, 2019 through March 19, 2020, Plaintiff should have received $1,155 in spread of hours compensation. *See* 12 N.Y. Comp. Codes R. & Regs. § 142-2.1.

The following chart outlines the numbers used to reach this calculation:

| Pay Period | Minimum Wage Rate | Number of Days Worked Over 10 Hours | No. of Weeks in Period | Total for Pay Period |
|---|---|---|---|---|
| 11/15/2018–12/30/2018 | $12.00 | 7 | 6 | $504.00 |
| 12/31/2018–12/30/2019 | $13.50 | 7 | 52 | $4,914.00 |
| 12/31/2019–3/19/2020 | $15.00 | 7 | 11 | $1,155.00 |
| **Total Spread of Hours Paid Owed:** | | | | **$6,573.00** |

Thus, I respectfully recommend awarding Plaintiff spread of hours pay in the amount of $6,573.00.

### D.   Liquidated Damages

Plaintiff seeks an award of liquidated damages under both the FLSA and NYLL. (Compl. ¶ 53, 73; Pl's Mem. at 12–13). An FLSA plaintiff can collect "liquidated damages awards equaling one-hundred percent of wages due," *Cabrera*, 412 F. Supp. 3d at 184 (citing 29 U.S.C. § 260), unless "the employer shows that, despite its failure to pay appropriate wages, it acted in subjective 'good faith' with objectively 'reasonable grounds' for believing that its acts or omissions did not violate the FLSA." *Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 150 (2d Cir. 2008) (quoting 29 U.S.C. § 260). Likewise, the NYLL allows a plaintiff "to receive liquidated damages 'equal to one hundred percent of the total amount of the wages found to be due,' unless the employer provides a good faith basis for believing he or she was in compliance with the law." *Martinez*, 2017 WL 5033650, at *23 (citing N.Y. Lab. L. §§ 198(1)(a), 663(1); *Xochimitl v. Pita*

*Grill of Hell's Kitchen, Inc.*, No. 14 Civ. 10234, 2016 WL 4704917, at *15 (S.D.N.Y. Sept. 8, 2016)). A plaintiff cannot recover liquidated damages under both the FLSA and NYLL; instead, "[c]ourts should award damages under the statute that provides for the greater recovery." *Leon*, 2017 WL 1184149, at *9 (citing *Luna*, 2017 WL 835321, at *14) (discussing the Second Circuit's disapproval of double recovery of liquated under the FLSA and NYLL for the same violations).

Here, as Defendants have defaulted, they have failed to provide any good faith basis that they were in compliance with the FLSA or NYLL. *Leon*, 2017 WL 1184149, at *9 (citing *Herrera v. Tri-State Kitchen & Bath, Inc.*, No. 14-CV-1695 (ARR) (MDG), 2015 WL 1529653, at *9 (E.D.N.Y. Mar. 31, 2015)) ("[D]efendants have not answered or otherwise appeared in this action, much less demonstrated a 'good faith' basis for believing the 'underpayment' of wages was lawful, as both the FLSA and the NYLL require to prevent the imposition of liquidated damages."); *see also Baizan Guerrero*, 2019 WL 4889591, at *9 ("Having defaulted, Defendants have failed to show any good faith basis for believing that Plaintiff's underpayment was justified."); *Cardoza*, 2015 WL 5561033, at *12 ("[I]n light of the default, there has also been no showing that Defendants acted in good faith or that the [c]ourt should decline exercising its discretion in granting liquidated damages."). Thus, Plaintiff is entitled to liquidated damages computed at 100% of the unpaid minimum and overtime wages and spread of hours pay due. *See Cabrera*, 412 F. Supp. 3d at 184; *Leon*, 2017 WL 1184149, at *9.

Accordingly, I respectfully recommend that Plaintiff be awarded $96,247.50 in liquidated damages.[5]

---

[5] $37,560.00 in unpaid minimum wages + $52,114.50 in unpaid overtime wages + $6,573.00 in unpaid spread of hours compensation = $96,247.50. Thus, 100% of the total wages due amounts to an additional $96,247.50 in liquidated damages.

E.    Statutory Damages for Wage Notice and Statements Violations

The NYLL allows a plaintiff who was not provided with the required wage notice to recover "$50 for each workday that the violation occurred, not to exceed $5,000." *Li v. Leung*, No. 15-CV-5262 (CBA) (VMS), 2016 WL 5369489, at *16 (E.D.N.Y. June 10, 2016) (citing N.Y. Lab. Law § 198(1)(b)), *adopted as modified by* 2016 WL 5349770 (Sept. 23, 2016)). Given that Plaintiff has established he worked for over one hundred days where a violation of Section 195(1) occurred, Plaintiff is entitled to the full statutory amount of $5,000. *See Baizan Guerrero*, 2019 WL 4889591, at *10 (awarding maximum statutory damages where plaintiff's employment exceeded 100 days).

For wage statement violations, a plaintiff can recover "$250 for each workday that the violation occurred, not to exceed $5,000." *Li*, 2016 WL 5369489, at *16 (citing N.Y. Lab. Law § 198(1-d)). Given that Plaintiff has established that he worked for over twenty days where a violation of Section 195(3) occurred, Plaintiff is entitled to the full statutory amount of $5,000. *See Baizan Guerrero*, 2019 WL 4889591, at *10 (awarding maximum statutory damages where plaintiff's employment exceeded 100 days).

Accordingly, I respectfully recommend that Defendants be held liable to Plaintiff for $10,000 in statutory damages for wage notice and wage statement violations.

F.    Prejudgment Interest

Plaintiff seeks prejudgment interest under the NYLL. (Compl. ¶ 73; Pl's Mem. at 14–15).

The NYLL permits an award of prejudgment interest, which "is calculated . . . on the unpaid wages due under the NYLL[.]" *Fermin*, 93 F. Supp. 3d at 49 (quoting *Mejia v. East Manor USA Inc.*, No. 10-CV-4313 (NG), 2013 WL 3023505, at *8 n.11 (E.D.N.Y. Apr. 19, 2013)). As a result, a plaintiff can collect prejudgment interest on unpaid minimum wages, unpaid overpaid wages, and spread of hours compensation, but "not on the liquidated damages awarded[,]" and not on

statutory damages awarded for wage notice and wage statement violations under NYLL §§ 195(1)–(3). *Fermin*, 93 F. Supp. 3d at 49 (quoting *Mejia*, 2013 WL 3023505, at *8 n.11); *Martinez*, 2017 WL 5033650, at *24 (citing N.Y. Lab. L. §§ 195(1)–(3)). Thus, this Court recommends that Plaintiff is entitled to collect prejudgment interest on the amounts awarded for his minimum wage, overtime, and spread of hours claims, not including the amount awarded as liquidated damages or statutory damages.

The method for calculating prejudgment interest is governed by Section 5001 of New York's Civil Practice Law and Rules. *Santillan*, 822 F. Supp. 2d at 298. Pursuant to the statute, "[p]rejudgment interest is regularly calculated at the rate of nine percent per annum on unpaid wages recovered under the NYLL." *Janus v. Regalis Const., Inc.*, No. 11-CV-5788 (ARR) (VVP), 2012 WL 3878113, at *8 (E.D.N.Y. July 23, 2012) (citing N.Y. C.P.L.R. §§ 5001, 5004), *adopted by* 2012 WL 3877963 (Sept. 4, 2012). "When unpaid wages 'were incurred at various times,' . . . [s]imple prejudgment interest is calculated from a singular, midpoint date . . . through the date judgment is entered." *Gortat v. Capala Bros.*, 949 F. Supp. 2d 374, 386 (E.D.N.Y. 2013) (citing *Maldonado v. La Nueva Rampa, Inc.*, No. 10 Civ. 8195 (LLS) (JLC), 2012 WL 1669341, at *11 (S.D.N.Y. May 14, 2012)); *see also Martinez*, 2017 WL 5033650, at *24 (quoting N.Y. CPLR § 5001(b)) ("Where . . . violations of the NYLL occur over an extended period, courts calculate prejudgment interest from a 'single reasonable intermediate date.'"). This "midpoint date" is typically "the midway point between when 'plaintiff[s] began and ceased working for defendant[s.]'" *Santillan*, 822 F. Supp. 2d at 298 (alterations in original) (quoting *Pavia v. Around The Clock Grocery, Inc.*, No. 03-CV-6465 (ERK) (CLP), 2005 WL 4655383, at *8 (E.D.N.Y. Nov. 15, 2005)); *see also Martinez*, 2017 WL 5033650, at *24 (calculating prejudgment interest from the midway point of each plaintiff's employment); *Baizan Guerrero*, 2019 WL 4889591, at *10

(quoting *Asfaw v. BBQ Chicken Don Alex No. 1 Corp.*, No. 14-CV-5665 (CBA) (RML), 2015 WL 13731362, at *7 (E.D.N.Y. Aug. 26, 2015)) ("This [c]ourt finds the 'midpoint of the relevant period of plaintiff's employment' to be a reasonable intermediate date.")). Based on these standards, this Court will calculate prejudgment interest from the date July 18, 2019, which is the midpoint between Plaintiff's start date of November 15, 2018, and his end date of March 19, 2020. (Compl. ¶ 20).

Accordingly, I respectfully recommend that Plaintiff be awarded prejudgment interest on $96,247.50 (the total of Plaintiff's damages for unpaid minimum wages, overtime premium, and spread of hours pay), at a rate of 9% per annum beginning July 18, 2019, for a total of $26,696.25, plus $23.73 per diem until judgment is entered.[6]

G.      Post-Judgment Interest

The Plaintiff seeks post-judgment interest pursuant to 28 U.S.C. § 1961. (Compl. ¶ 53, 73; Pl's Mem. at 16). Section 1961(a) states that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court," and that "[s]uch interest shall be calculated from the date of the entry of judgment at a rate equal to the weekly average 1–year constant maturity Treasury yield . . . for the calendar week preceding the date of judgment." 28 U.S.C. § 1961(a). An award of post-judgment interest is "mandatory" in the Second Circuit. *Baizan Guerrero*, 2019 WL 4889591, at *11 (quoting *Hernandez v. Delta Deli Mkt. Inc.*, No. 18-CV-00375 (ARR) (RER), 2019 WL 643735, at *22 (E.D.N.Y. Feb. 12, 2019)). Accordingly, this Court respectfully recommends that Plaintiff be awarded post-judgment interest, to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment at the federal statutory rate. *Leon*, 2017 WL 1184149, at *10 (citing 28 U.S.C. § 1961).

---

[6] Calculated as of August 16, 2022. $96,247.50 X (0.09 / 365) = $23.73 per diem. $23.73 X 1,125 days = $26,696.25.

H.    Automatic Increase for Failure to Pay

Plaintiff claims that the total amount of the judgment should automatically increase by fifteen percent if it is not paid within ninety days after the judgment is entered. (Pl's Mem. at 16–17).

The NYLL states that "[a]ny judgment or court order awarding remedies under this section shall provide that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal therefrom is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent." N.Y. Lab. Law §§ 198(4); 663(4).

Some courts in this District have applied the automatic increase penalty contemplated by NYLL Sections 198(4) and 663(4) to judgments awarding damages based on violations of the New York Labor Law in lieu of federal post-judgment interest pursuant to 28 U.S.C. § 1961. *See, e.g.*, *Santana v. 82 Food Corp.*, No. 19-CV-4733 (SMG), 2020 WL 9814100, at *12 (E.D.N.Y. July 10, 2020) (granting request for automatic increase under NYLL Sections 198(4) and 663(4) as "post-judgment interest" where "[d]amages have been awarded only under the NYLL."); *Saavedra v. Twin Kitty Bakery Corp.*, No. 18-CV-932 (PKC) (PK), 2021 WL 1394487, at *17 (E.D.N.Y. Feb. 16, 2021) (recommending automatic fifteen percent increase where "all of [p]laintiffs' damages are attributable to the NYLL" without mentioning "post-judgment interest" or discussing application of 28 U.S.C. § 1961), *adopted by* 2021 WL 1169321 (Mar. 29, 2021); *Montellano-Espana v. Cooking Light Inc.*, No. 14-CV-01433 (SJ) (RLM), 2016 WL 4147143, at *8 (E.D.N.Y. Aug. 4, 2016) (same). Other courts in this District have simultaneously awarded post-judgment interest under 28 U.S.C. § 1961 and have held the automatic increase penalty under the NYLL to apply. *See e.g.*, *Jacome v. Optical 49, Inc.*, No. 20-CV-02615 (DG) (PK), 2021 WL 3375134, at *13 (E.D.N.Y. July 9, 2021) (recommending both post-judgment interest at the federal statutory

rate and the NYLL penalty), *adopted by* 2021 WL 3373130 (Aug. 3, 2021); *De la Cruz Casarrubias v. Surf Ave Wine & Liquor Inc.*, No. 20-CV-3003 (AMD) (RLM), 2021 WL 2227977, at *10, *13 (E.D.N.Y. May 11, 2021) (same), *adopted by* 2021 WL 2223275 (June 2, 2021); *Jian Hua Li v. Chang Lung Grp. Inc.*, No. 16-CV-6722 (PK), 2020 WL 1694356, at *14, *16 (E.D.N.Y. Apr. 7, 2020) (same); *Saldana v. New Start Grp., Inc.*, No. 14-CV-4049 (CBA) (RLM), 2016 WL 3683530, at *5 (E.D.N.Y. July 6, 2016) (same).

However, one judge in this District has held that the NYLL penalty can only apply to judgments entered by a New York state court, and does not apply to federal judgments. *See Chen v. Asian Terrace Rest., Inc.*, No. 19-CV-7313 (BMC), 2022 WL 1460272, at *3 (E.D.N.Y. May 9, 2022); *Quesada v. Hong Kong Kitchen Inc.*, No. 20-CV-5639 (BMC), 2021 WL 861800, at *2 (E.D.N.Y. Mar. 8, 2021). In *Quesada*, the court reasoned that "once a federal judgment has been entered, all claims, state and federal, are merged into it, and any state court provisions addressed to the judgment no longer apply. For example, any post-judgment interest will accrue at the much lower federal rate . . . not the rate under N.Y. C.P.L.R. § 5004 of 9%." *Quesada*, 2021 WL 861800, at *2. Similarly, in *Chen*, the court specified that "[t]he fact that under NYLL § 198(4), an increased percentage of the judgment is intended to induce payment does not change [the applicability of 28 U.S.C. § 1961]" and noted that "special state legislation like NYLL § 198(4) is not a sufficient reason to depart from the 'inflexible, unitary rule' by which post-judgment accruals are applied to all federal judgments." *Chen*, 2022 WL 861800, at *3 (quoting *Carte Blanche (Singapore) Ltd. v. Carte Blanche International, Ltd.*, 888 F.2d 260, 270 (2d Cir. 1989)).

Especially given the "mandatory" nature of post-judgment interest, *see Baizan Guerrero*, 2019 WL 4889591, at *11 (quoting *Hernandez*, 2019 WL 643735, at *22), I agree that the late-payment penalty contemplated by NYLL §§ 198(4) and 663(4) should not be imposed in lieu of a post-

judgment interest award at the federal rate. However, while both provisions are intended to induce payment, the one-time, late payment penalty is different in kind from a post-judgment interest award which accrues in perpetuity until the judgment is satisfied. Further, as noted above, many courts in this District have found that the application of both 28 U.S.C. § 1961 and NYLL §§ 198(4) and 663(4) is not mutually exclusive. *See, e.g.*, *Jacome v. Optical 49, Inc.*, 2021 WL 3375134, at *13; *De la Cruz Casarrubias*, 2021 WL 2227977, at *10, *13). Indeed, New York state courts applying§ NYLL § 198(4) have not read the provision to supplant the post-judgment interest awarded pursuant to C.P.L.R. § 5004. *See Orser v. Wholesale Fuel Distributors-CT, LLC*, 108 N.Y.S.3d 675, 686–87 (N.Y. Sup. Ct. 2018), *aff'd*, 173 A.D.3d 1519 (N.Y. App. Div. 2019) (simultaneously awarding post-judgment interest pursuant to N.Y. C.P.L.R. § 5004 and imposing the fifteen percent penalty if the judgment remains unpaid after ninety days).

Accordingly, in addition to the post-judgment interest award described above, I respectfully recommend that if the Court's judgment remains unpaid upon the expiration of ninety days following the issuance of the judgment, or ninety days after expiration of the time to appeal and no appeal is pending, the total amount of the judgment should automatically increase by fifteen percent.

I.    Joint and Several Liability

"Where multiple defendants are found to be a plaintiff's employer, 'each [d]efendant is jointly and severally liable under the FLSA and NYLL for any damages awards made in [that] [p]laintiff['s] favor.'" *Jacome v. Optical 49, Inc.*, No. 20-CV-02615 (DG) (PK), 2021 WL 3375134, at *13 (E.D.N.Y. July 9, 2021) (quoting *Fermin*, 93 F. Supp. 3d at 37), *adopted*, 2021 WL 3373130 (Aug. 3, 2021). As Moca Grocery and the Individual Defendants were Plaintiff's joint employers, they are jointly and severally liable for their violations of the FLSA and NYLL.

V.   <u>Attorney's Fees and Costs</u>

Under both the FLSA and NYLL, a prevailing party is "entitled to recover reasonable attorney's fees and costs[.]" *Castro v. Hyper Structure Corp.*, No. 21-CV-01391 (ENV) (JRC), 2022 WL 2467242, at *15 (E.D.N.Y. Mar. 7, 2022) (citing 29 U.S.C. § 216(b), N.Y. Lab. Law §§ 198, 663(1)); *see also Rigoberto Manzanares v. Your Favorite Auto Repair & Diagnostic Ctr., Inc.*, No. 17-CV-5001 (MKB) (RML), 2018 WL 6718766, at *12 (E.D.N.Y. Nov. 7, 2018), *adopted by* 2018 WL 6517111 (Dec. 11, 2018) (same). A party "prevails" when "'they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'" *Atsas v. L. Off. of Alex Antzoulatos*, No. 20-CV-3838 (MKB) (CLP), 2021 WL 4755703, at *11 (E.D.N.Y. Aug. 10, 2021) (quoting *Khalil v. Original Old Homestead Rest.*, Inc., 657 F. Supp. 2d 470, 474 (S.D.N.Y. 2009)) (finding plaintiffs were the prevailing parties "because defendants have defaulted."), *adopted by* 2021 WL 3928951 (Sept. 2, 2021)). Thus, as Defendants have defaulted, and Plaintiff has obtained some of the benefit he sought in bringing suit, Plaintiff is the prevailing party.

Plaintiff does not include a fee application in his Memorandum of Law, but instead requests that "Plaintiff's counsel [receive] [thirty] days to file a motion for attorneys' fees and costs," in the event that a default judgment is ordered. (Pl's Mem. at 17–18; Kumar Decl. ¶ 28). Courts in this District have approved of such procedures. *See Rigoberto Manzanares*, 2018 WL 6718766, at *12 (allowing plaintiffs thirty days from the date of final judgment to file application for attorney's fees where "plaintiffs indicate that they will move separately for attorney's fees and costs."); *Cabrera*, 412 F. Supp. 3d at 186 (E.D.N.Y. 2019) (allowing thirty days after final judgment for completed attorney application to be submitted where plaintiff "requests that attorney's fees and costs be determined at a later time."); *Castro*, 2022 WL 2467242, at *15 (recommending

"plaintiffs' counsel be permitted to submit a complete fee application with billing records within [thirty] days [the of district judge's] decision on this Report and Recommendation.").

As Plaintiff is indeed the prevailing party, this Court respectfully recommends that Plaintiff be granted thirty days from the date of Your Honor's decision on this Report and Recommendation to submit an application for attorney's fees and costs.

## CONCLUSION

For the reasons set forth above, I respectfully recommend that Plaintiff's Motion for Default Judgment should be granted as to Defendant Moca Grocery, but denied without prejudice as to Defendants Mario Duran and Isidro Rodriguez. Should Plaintiff file proof of service of the instant Motion and this Report and Recommendation upon the Individual Defendants at their last known residence in compliance with Local Rule 55.2(c), I respectfully recommend that Plaintiff's Motion for Default Judgment be granted as to the Individual Defendants as well.

With respect to damages, I respectfully recommend that Plaintiff be awarded $202,495, consisting of $37,560 in unpaid minimum wage compensation, $52,114.50 in unpaid overtime wage compensation, $6,573 in unpaid spread of hours compensation, $96,247.50 in liquidated damages, $10,000 in statutory damages, $26,696.25 in prejudgment interest on the principal unpaid wages, plus $23.73 per diem until judgment is entered, post-judgment interest in accordance with 28 U.S.C. § 1961, and a fifteen percent increase in the total amount of damages for NYLL violation if the conditions of NYLL § 663(4) are met. Finally, to the extent that Plaintiff wishes to recover attorney's fee and costs, I respectfully recommend that Plaintiff be granted thirty days from the date of Your Honor's decision on the instant Report and Recommendation to submit a fee application.

Plaintiff is hereby directed to serve copies of this Report and Recommendation upon Defendants by regular and certified mail and to file proof of service with the Clerk of the Court. Any objections to the recommendations made in this Report must be filed with the Clerk of the Court and the Honorable Ann M. Donnelly within fourteen (14) days of receipt hereof. Failure to file timely objections waives the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).


RESPECTFULLY RECOMMENDED.


**/s/Ramon E. Reyes, Jr.**

RAMON E. REYES, JR.
United States Magistrate Judge

Dated: August 16, 2022
Brooklyn, NY